JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Ingrid Valdes | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**     MEMORANDUM AND ORDER ON APPEAL FROM
ADMINISTRATIVE LAW JUDGE'S DECISION

## I.     INTRODUCTION

This case arises under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400, et seq. On July 31, 2015, plaintiff M.S., a minor, by and through her Guardian Ad Litem, R.H. (collectively, "plaintiff" or "M.S."), filed suit against defendant Los Angeles Unified School District ("the District" or "LAUSD"), alleging violation of the IDEA and seeking reversal of the Administrative Law Judge's ("ALJ") May 4, 2015 decision as to three issues.[1]

Presently before the Court is M.S.'s administrative appeal. A hearing was held on June 3, 2016. Plaintiff presents the following three primary issues for determination: (1) Whether the District denied plaintiff of a Free and Appropriate Public Education under the IDEA by failing to discuss placement at a residential treatment facility at the October 21, 2014 IEP meeting, see Student Issue 1(A)(5); (2) Whether the District denied plaintiff of a Free and Appropriate Public Education under the IDEA by predetermining the question of placement at a residential treatment facility at the October 21, 2014 IEP meeting, see Student Issue 1(A)(7); and (3) Whether the District denied plaintiff of a Free and Appropriate Public Education under the IDEA by failing to offer placement at a residential treatment facility in the February 26, 2014 IEP and October 21, 2014 IEP meetings, see Student Issue 1(A)(11).

---

[1]   M.S. presented a total of twelve issues to the ALJ, and the District prevailed on all but one of these twelve issues. Here, as discussed in greater detail infra, M.S. only seeks review and reversal of three of the eleven issues on which the ALJ ruled in favor of the District.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   STATUTORY FRAMEWORK

The IDEA grants federal funds to state and local agencies to provide a special education to children with disabilities. 20 U.S.C. § 1412(a); Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993). To this end, schools are charged with the responsibility of identifying and assessing all children who are suspected of having disabilities and are in need of special education and related services. 20 U.S.C. § 1400(a)(3); 34 C.F.R. § 300.125; see also Cal. Educ. Code § 56302.

The purpose of the IDEA is, among other things, to provide all children with disabilities

> a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living; [] to ensure that the rights of children with disabilities and parents of such children are protected; [] and to assist States, localities, educational services agencies, and Federal agencies to provide for the education of all children with disabilities.

20 U.S.C. § 1400(d)(1)(A)-(C).

This purpose is implemented through the development of an individualized education plan ("IEP"). An IEP is crafted by a team that includes a student's parents, teachers, and the local educational agency. 20 U.S.C. § 1414(d). The IEP contains the student's present level of performance, annual goals, short and long term objectives, specific services to be provided, the extent to which the student may participate in regular educational programs, and criteria for measuring the student's progress. Id.

The IDEA requires that educators also guarantee certain procedural safeguards to children and their parents, including: notification of any changes in identification,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

education and placement of the student; parental presence at the IEP meeting; and a mechanism for parents to bring complaints about issues relating to the student's education and placement, which may result in a mediation or a due process hearing conducted by a local or state educational agency hearing officer. 20 U.S.C. § 1415(b)-(i). If, for example, a parent objects to certain proposed changes in a child's placement, the IDEA's "stay put provision" may, when invoked, permit the student to remain in his or her current educational placement until the dispute is resolved. See 20 U.S.C. § 1415(j) ("[D]uring the pendency of any proceedings conducted pursuant to this section, . . . the child shall remain in the then-current educational placement of the child.").

Furthermore, a party may bring a civil action in state or federal court in the event that it is dissatisfied with the decision of an agency hearing officer. 20 U.S.C. § 1415(i)(2). "The burden of proof in the district court rest[s] with . . . the party challenging the administrative decision." Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1104 (9th Cir. 2007). The court, in considering a request for review of a hearing officer's decision, must base its decision on the preponderance of the evidence, and grant such relief as the court determines is appropriate. Id.

**III.    FACTUAL BACKGROUND**

The decision below contains detailed and thorough factual findings. See AR 1751-1823 (ALJ Decision). With the exception of those factual findings that are more appropriately construed as conclusions of law, the Court concludes that the factual findings in the decision below are accurate, and adopts them as they are set out.[1] Additionally, since the factual findings encompass matters no longer pursued in this appeal, and to provide context for the Court's decision, the Court summarizes the relevant facts.

---

[1]  For example, the ALJ styled the following as a factual finding: "[M.S.] did not demonstrate through Dr. Large's assessment report and her testimony that the October 21, 2014 IEP was not reasonably calculated to permit [M.S.] to make meaningful educational progress." AR 1791 (ALJ Finding of Fact No. 154). This finding is better characterized as a conclusion of law, and accordingly is not adopted by this Court as a factual finding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

M.S. is a seventeen-year-old girl who has experienced emotional trauma since at least the age of four years old, when she witnessed her mother's death from a brain aneurism. After her mother passed away, M.S. lived with her maternal grandparents, as her father was not actively involved in her life. In 2010, when M.S. was eleven years old, the Los Angeles County Department of Children and Family Services ("DCFS") removed M.S. from her grandparents' care due to allegations of physical abuse and caretaker incapacity. M.S. has been a ward of the Los Angeles County Superior Court and DCFS ever since. As a result, DCFS is responsible both for providing her with suitable housing and for meeting her mental health needs, pursuant to California state law. In addition, because M.S. is categorized as having severe emotional disturbance, she qualifies for special education services under the IDEA.

In 2010, M.S. experienced the first of five mental health hospitalizations that continued over the next few years with episodes of violence towards others. By 2012, M.S. had been hospitalized six times and had been in eight different out-of-home placements. The placements included foster homes as well as numerous residential placements, including a placement at a locked residential treatment facility, Harbor View Adolescent Center, in May 2012. While at Harbor View, M.S. broke a peer's nose and assaulted a staff member, which led to her arrest and a seven-month-long detainment in Central Juvenile Hall.

### A.    February 28, 2013 IEP

At the time of her February 28, 2013 IEP meeting, M.S. was participating in a special day class at Juvenile Court and Community School. Among other things, M.S.'s February 28, 2013 IEP offered counseling, special day classes, and behavioral support. The IEP noted that several of M.S.'s educational goals were unmet, but found that a general education setting was an appropriate placement. M.S.'s educational rights holder signed the IEP, but disagreed that the IEP constituted a FAPE. Specifically, she wrote, "I agree to implement [special day class] placement while [M.S.] is detained, but maintain[]that she requires residential placement."

### B.    March 2013 Release from Juvenile Hall and Subsequent Placement by DCFS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

Pursuant to an order of the Juvenile Division of the Los Angeles County Superior Court ("the Juvenile Court"), dated March 14, 2013, M.S. "remains a dependent child of the court." The Juvenile Court's March 14, 2013 order further required DCFS to provide M.S. with "permanent placement services."[1] On or about April 19, 2013, upon M.S.'s release from Juvenile Hall, DCFS placed M.S. in another locked residential treatment facility called Vista Del Mar Community Treatment Facility (the "Vista Facility"). The Vista Facility is a Community Treatment Facility ("CTF") and a Licensed Children's Institution ("LCI"), with a Rate Classification Level of 14. To qualify for placement in a CTF like the Vista Facility, certain criteria must be met. It is undisputed that M.S.'s placement at the Vista Facility was made in accordance with applicable state regulations and was made by DCFS because M.S.'s mental health and behavioral issues required intensive psychiatric care.

The Vista Facility is an LCI located within defendant Los Angeles Unified School District. While M.S. resided at the Vista Facility, the District provided her special education and services by paying for M.S's attendance at the non-public school located within the Vista Facility (the "Vista School").[2] The District convened IEP meetings on each of the following three dates: June 4, 2013, February 26, 2014, and October 21, 2014.

## C.    June 4, 2013 IEP Meeting

At the June 4, 2013 IEP meeting, the IEP team noted that M.S. had not met the goals established in her previous IEP. The IEP team offered M.S. continued placement at the Vista School. The District did not offer placement in a residential treatment center for educational purposes, though M.S. was already in a residential treatment facility (the Vista Facility) pursuant to DCFS's placement. M.S.'s educational rights holder at the time stated that she disagreed with the assessment and felt that the IEP did not constitute

---

[1]  When a minor like M.S. is appointed a ward of the court, "the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor or nonminor, including medical treatment, subject to further order of the court." Cal. Welf. & Inst. Code § 727(a).

[2]  Under the California Education Code, a nonpublic school is defined as a "private, nonsectarian school that enrolls individuals with exceptional needs pursuant to an individualized education program." Cal. Educ. Code § 56034.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

a FAPE. She requested an "educationally related mental health assessment for residential."

### D.     February 26, 2014 IEP Meeting

M.S. was still residing at the Vista Facility and enrolled in the Vista School at the time of her February 26, 2014 IEP meeting. At the meeting, the IEP team noted that M.S. had made some progress, but had not achieved the goals set forth in the previous IEP. The February 26, 2014 IEP itself states that M.S.'s "eligibility of Emotional Disturbance significantly impacts her ability to access instruction . . . ." It also states that additional support, including a one-to-one aid, had a positive effect on M.S.'s behaviors, such as her running away, which had been disrupting her education.

The District offered continued placement in a non-public school. Nobody at the IEP meeting requested that the District offer a residential placement. Nobody at the IEP meeting stated that the DCFS residential placement in the locked Vista Facility was inappropriate for M.S. And nobody at the IEP meeting stated that the IEP did not provide M.S. with an educational benefit. However, M.S.'s educational rights holder at the time, Ms. K., did not agree with the February 26, 2014 IEP and did not consent to implementing it, stating that it did not constitute a FAPE.

Shortly thereafter, Ms. K. was replaced as M.S.'s educational rights holder by Ms. W, who consented to the implementation of the February 26, 2014 IEP, but did not agree that it constituted a FAPE. M.S. continued to live at the Vista Facility under the authority of DCFS, and the District began to implement the February 26, 2014 IEP.

### E.     October 21, 2014 IEP Meeting

In May 2014, M.S.'s attorney referred M.S. to Dr. Mary Large for a comprehensive neuropsychological assessment. Dr. Large drafted a report and submitted it to the District prior to M.S.'s October 21, 2014 IEP meeting. On October 10, 2014, M.S.'s counsel sent a letter to Vista's assistant principal, advising her that he wished to discuss four topics at the meeting, one of which was placement in the least restrictive environment for M.S., including inclusion and mainstreaming opportunities. At the time of the IEP meeting, M.S. was still residing at the Vista Facility and enrolled in the Vista School.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|------------------------|------|---------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

During the meeting, the IEP team discussed the four topics that M.S.'s counsel had previously advised the parties he and the educational rights holder wanted to discuss. The team first addressed placement. Due to M.S's increased academic and behavioral improvement, DCFS planned to move M.S. to a less restrictive, level 14 unlocked residential facility. The team discussed whether M.S. should take classes at Vista's open nonpublic school in the event she were not transitioned to another facility, as well as whether M.S. could attend a public school. While the IEP team acknowledged that eventually M.S. may "step down to a less restrictive level of residential care," the administrative designee cautioned that "reading this IEP, I don't know if she's doing that great." M.S.'s attorney also explained that M.S. "has difficulty with transition" and "it seems like every time she starts somewhere new her behaviors will rise up again."

Although the District had received Dr. Large's neuropsychological assessment, the IEP team did not discuss or review the assessment. Ultimately, it was decided that M.S. would remain at the Vista Facility and Vista School until DCFS decided on a new residential placement. M.S. was not offered residential treatment as part of her IEP. The educational rights holder agreed to the implementation of the IEP but disagreed that it constituted a FAPE.

**F.     January 2015 Movement to a Less Restrictive Facility**

In or about mid-January 2015, DCFS removed M.S. from the Vista Facility and placed her in a less restrictive facility outside the boundaries of the District. Almost immediately, M.S. ran away from this facility. Her whereabouts were unknown for four days and she did not attend school during this time. Eventually, she was located and returned by police to the care of DCFS.

DCFS then made an emergency placement for M.S. in Delilu Achievement Home, a temporary facility. While the facility is designed for temporary placement, M.S. remained there for 30 days. DCFS eventually placed M.S. in Diamondale, a level 12 residential LCI within the boundaries of the District. Diamondale was also a less restrictive environment than the Vista Facility. While M.S. was residing at Delilu and Diamondale, M.S.'s attorneys filed a "stay put" motion, pursuant to 20 U.S.C. § 1415(j), to keep M.S. enrolled at the Vista School, which was the educational placement stated on her latest IEP. Notably, while the IEP called for educational placement at the Vista

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

*School*, it did not call for a residential treatment component at the Vista *Facility*. Indeed, none of M.S.'s IEPs reflected any need for a placement at a residential treatment facility like the Vista Facility.

## IV. ADMINISTRATIVE PROCEEDINGS

On November 21, 2014, shortly after her October 21, 2014 IEP meeting, M.S. initiated a due process hearing before the Office of Administrative Hearings ("OAH"). She alleged that the District failed to provide her with a FAPE, in violation of the IDEA, on twelve separate grounds. Following a seven-day hearing with numerous witnesses, the ALJ concluded that the District "provided [M.S.] a FAPE in all aspects at issue in this case but one"—namely, the ALJ concluded that the District's failure, during the October 21, 2014 IEP meeting, to consider Dr. Mary Large's neuropsychological assessment report pertaining to M.S. constituted a procedural violation of the IDEA which deprived M.S. of a FAPE. <u>See</u> AR 1755 (ALJ's discussion of Student Issue 1(A)(6)).

Of the eleven issues on which the ALJ ruled in favor of the District, M.S. appeals only the following three issues:

> A.     *Whether the District deprived Student of a FAPE by reason of the following:*

Student Issue 1(A)(5):     failing to discuss placement at a residential treatment facility at the October 21, 2014 IEP meeting;

Student Issue 1(A)(7):     predetermining the question of placement at a residential treatment facility at the October 21, 2014 IEP meeting;

Student Issue 1(A)(11):     failing to offer placement at a residential treatment facility in the February 26, 2014 IEP and October 21, 2014 IEP meetings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

As to these three issues, the ALJ concluded that only DCFS "was legally responsible to provide an appropriate placement for [M.S.'s] mental health needs, and the evidence was undisputed that placement in the locked Vista residence was appropriate." AR 1754 (ALJ's Summary of Decision). Therefore, the District "had no obligation to offer the locked Vista residence as part of its FAPE offer to [M.S], because [DCFS] had already placed [her] there, in compliance with the court order that it provide a residential placement to [M.S], and further in compliance with its own legal obligation to provide a placement that was appropriate for [M.S.'s] mental health needs." AR 1755 (ALJ's Summary of Decision).

**V.     STANDARD OF REVIEW**

The standard of review applicable to IDEA administrative proceedings is established by the statute itself. The IDEA provides that in evaluating an administrative decision, the Court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); see Ojai, 4 F.3d at 1471-72.

The Court reviews *de novo* the appropriateness of a special education placement under the IDEA. Seattle Sch. Dist. No. 1 v. B.S., 82 F.3d 1493, 1499 (9th Cir. 1996); Livingston Sch. Dist. Nos. 4 & 1 v. Keenan, 82 F.3d 912, 915 (9th Cir. 1996). Despite the *de novo* standard of review, however, the Court is required to give due weight to the hearing officer's administrative findings and appropriate deference to the policy decisions of school administrators. The Ninth Circuit has articulated the deference to be given to the administrative findings as follows:

The court reviews *de novo* the appropriateness of a special education placement under the IDEA. Nevertheless, when reviewing state administrative decisions, courts must give due weight to judgments of education policy. Therefore, the IDEA does not empower courts to substitute their own notions of sound educational policy for those of the school authorities which they review. Rather, the court in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|------------------------|------|--------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

officer's resolution of each material issue. After such
consideration, the court is free to accept or reject the findings in
part or in whole. Despite their discretion to reject the
administrative findings after carefully considering them,
however, courts are not permitted simply to ignore the
administrative findings.

Cnty. of San Diego v. California Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th
Cir. 1996) (internal citations and quotations omitted); see also Board of Educ. of the
Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206
(1982).

A court may, in its discretion, choose to accord greater deference to a hearing
officer's findings when those findings are thorough and careful. Capistrano Unified Sch.
Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995). A court may "treat a hearing
officer's findings as thorough and careful when the officer participates in the questioning
of witnesses and writes a decision containing a complete factual background as well as a
discrete analysis supporting the ultimate conclusions." R.B. v. Nappa Valley Unified
Sch. Dist., 496 F.3d 932, 942 (9th Cir. 2007); Park v. Anaheim Unified High Sch. Dist.,
464 F.3d 1025, 1031 (9th Cir. 2006). Nonetheless, "at bottom, the court itself is free to
determine independently how much weight to give the administrative findings in light of
the enumerated factors." Cnty. of San Diego, 93 F.3d at 1466.

In this case, the administrative hearing lasted seven days and the ALJ's seventy-
two page decision contains a detailed factual analysis that runs 166 paragraphs in length.
Moreover, although the parties dispute in their respective briefing each other's
*characterizations* of the ALJ's findings, the ALJ's actual factual findings appear not to be
disputed. Therefore, the Court will give the ALJ's factual findings deference and review
the legal conclusions *de novo*. Id.

## VI. DISCUSSION

The gravamen of this appeal is the following question: was the District required, at
the IEP meetings on February 26 and October 21, 2014, to consider and offer M.S. an
*educational* residential placement as part of her IEP when she was already placed in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|------------------------|------|---------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

residential treatment center by DCFS, for *non-educational reasons*, pursuant to a Juvenile Court order requiring DCFS to provide "permanent placement services."

At the outset, the Court first takes note of certain issues on which the parties agree. It is undisputed that following M.S.'s release from Juvenile Hall, DCFS's decision to place M.S. at the Level 14 locked Vista Facility (1) was for mental health reasons and not for educational reasons; (2) was required by—and was made in compliance with—relevant state law governing DCFS's obligation to provide "permanent placement services" to M.S.; and (3) did not impose the financial burden of M.S.'s treatment at the Vista Facility upon M.S. See Plaintiff's Responsive Brief ("P's Resp. Br.") at 10. The parties diverge, however, in their views regarding whether—in spite of DCFS's discharge of its responsibilities to M.S.—the District was independently required under the IDEA to consider M.S.'s entitlement to residential placement for *educational* reasons.

The District contends that it was "not legally obligated" to discuss or consider the possibility of placing M.S. in a residential treatment center because DCFS "ha[d] already determined M.S.'s residential placement . . . pursuant to Court Order and DCFS policy." See Defendant's Opening Brief ("D's Opening Br.") at 11. The District maintains that it "had no obligation to offer a residential placement [that was] already being provided by DCFS at no cost to [M.S.]." Id. at 8. In the District's view, it must "focus on education . . . because public school districts exist for the purpose of providing educational services, not residential placements to treat severe mental health problems, and are not general-purpose social service institutions, such as DCFS." Id. at 10. M.S. argues, however, that DCFS and the District operate under two "separate but parallel statutory schemes," pursuant to which each entity has distinct responsibilities under state and federal law. See Plaintiff's Opening Brief ("P's Opening Br.") at 2. According to M.S., DCFS's fulfillment of its responsibilities under state law regarding a child's mental health needs does not relieve the District of its separate responsibility under the IDEA to consider whether placement in a residential treatment center is necessary for *educational* reasons and, therefore, needed to ensure that M.S. receives a FAPE.

As to these disputed legal issues, the ALJ ruled in favor of the District. For the reasons articulated in the discussion that follows, the Court reverses.

   **A.    Whether the District Denied M.S. a FAPE by Failing to Discuss and**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

**Predetermining her "Residential Placement" at the October 21, 2014 IEP Meeting**

A school district must comply with the IDEA both procedurally and substantively in order to provide a student with a FAPE. See Doug C. v. Hawaii Dep't of Educ., 720 F.3d 1038, 1043 (9th Cir. 2013). To determine whether a public agency provided a student a FAPE, the Court must conduct a two-part inquiry: "First, [the court] must consider whether the State complied with the procedures set forth in the [the IDEA]. Second, [the court] must determine whether the IEP is reasonably calculated to enable the child to receive educational benefits. A state must meet both requirements to comply with the obligations of the IDEA." Id. (internal citations omitted). Notably, however, "[w]here a court identifies a procedural violation that denied a student a FAPE, the court need not address the second prong." Id.

### 1.    Procedural Compliance

While "[h]armless procedural errors do not constitute a denial of FAPE," those procedural inadequacies "that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of [a] FAPE." Id. (citations omitted). The Supreme Court has emphasized the importance that Congress attached to the IDEA's procedural safeguards:

> [T]he congressional emphasis upon full participation of concerned parties throughout the development of the IEP, as well as the requirements that state and local plans be submitted to the Secretary for approval, demonstrates the legislative conviction that *adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.*

Rowley, 458 U.S. at 206 (emphasis added). "More often than not, if a student is eligible under the IDEA, a procedural violation that causes 'some defect' in the student's IEP is a denial of a FAPE." Cupertino Union Sch. Dist. v. K.A., 75 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014) (citation omitted).

### a.    *Residential Placement under the IDEA*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

     In this administrative appeal, M.S. first argues that the District committed a procedural violation of the IDEA, and thereby denied her a FAPE, by (1) predetermining her residential placement in advance of her October 21, 2014 IEP meeting, and by (2) failing to discuss her residential placement during the October 21, 2014 IEP meeting. Throughout the course of both the administrative action and the instant suit, the District has maintained that it "was not legally obligated to discuss M.S.'s residential placement as part of the FAPE offer in the February 26, 2014 and October 21, 2014 IEPs" because DCFS was already required under state law to provide M.S. with a residential placement, and did in fact provide such a placement at no cost to plaintiffs.  D's Opening Br. at 11; see also AR 94; AR 103 (stating that it would be "legally impossible for the OAH to find [LAUSD] responsible for offering and/or providing" placement in a residential treatment center).  The ALJ similarly concluded that M.S. had offered "no legal authority that states that when, as here, a public agency that is not a school district or local educational agency is obligated to provide a placement or service, *and* provides such a placement or service, *and* the placement or service is appropriate, a school district must *also* offer to provide such a placement or service in the IEP."  AR 1807 (ALJ Conclusion of Law No. 44) (emphasis in original).

     In reaching these conclusions, both the District and the ALJ improperly conflate two distinct types of "placement."  On the one hand, there is DCFS's obligation to provide necessary and appropriate "permanent placement services," pursuant to a Juvenile Court order and with consideration to M.S.'s *mental health* needs.  See AR 1308-1309; see generally Cal. Welf. & Inst. Code §§ 4094, et seq. (regarding programs for seriously emotionally disturbed children and court wards and dependents).

     On the other hand, there is the District's independent obligation to consider whether M.S. is entitled to a "residential placement," pursuant to the IDEA, in light of her *educational needs*.[1]  Under the IDEA, the services provided by a school district are

---

[1]  In one passage that is demonstrative of how the District conflates these types of placement, the District states the following:

> On April 14, 2013, while [M.S.] was residing at Central
> Juvenile Hall, DCFS was ordered by the court to provide
> "permanent placement services". . . . Pursuant to the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

commonly referred to as the student's "placement."  The IDEA provides that school districts like LAUSD "must ensure that a continuum of alternative placements is available to meet the needs of children with disabilities for special education and related services." 34 C.F.R. § 300.115(a).  This "continuum" of alternative placements may include "placement in a public or private *residential program*," in the event such a program "is necessary to provide special education and related services to a child with a disability." 34 C.F.R. § 300.104 (emphasis added); cf. J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 441 (9th Cir. 2010) ("According to the IDEA and California's Education Code, each student must be assessed in *all areas* of his or her suspected disability.") (emphasis added) (citing 20 U.S.C. § 1414(b)(3); Cal. Educ. Code § 56320(f)).

Generally, in order to determine whether a residential placement under the IDEA is necessary to provide a student a FAPE, the relevant analysis in the Ninth Circuit "must focus on whether [the residential] placement may be considered necessary *for educational purposes*, or whether the placement is a response to medical, social, or emotional problems that is necessary quite apart from the learning process." Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1184 (9th Cir. 2009) (emphasis added) (quoting Clovis, 903 F.2d 635, 643); see also Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1500 (9th Cir. 1996) ("[R]esidential placement is appropriate for a disabled child if necessary for her to receive benefit from her education."), abrogated in part on other grounds by Schaffer v. Weast, 546 U.S. 49, 56-58 (2005).

---

order[] . . . on April 18, 2013, DCFS placed [M.S] at Vista Del Mar.  There is no dispute that DCFS made the ***residential placement*** decision for [M.S.] . . . because DCFS was ordered by the court to provide placement services.  As such, the District was not obligated to convene an IEP meeting to offer a ***residential placement*** because [M.S.] was already in a ***residential placement*** pursuant to a juvenile court placement order that placed her in the care, custody, and control of DCFS.

D's Opening Br. at 21 (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

Where the level of services provided by a residential treatment center is needed for a student to access a FAPE—that is, when the residential placement is "considered necessary for educational purposes" and not merely "necessary quite apart from the learning process," Clovis, 903 F.2d at 643—it is appropriate for the student's IEP to reflect the need for residential placement.[1] See 20 U.S.C. §§ 1401(a)(9), (10) (defining elementary and secondary schools to include "residential schools"); see, e.g., N.G. v. ABC Unified School Dist., No. CV-13-06929, 2014 WL 4678967, at * 1 (C.D. Cal. Sep. 19, 2014) (Gee, J.) ("[U]pon discharge from College Hospital, N.G. should be placed in a [residential treatment center] which is reflected in the . . . IEP."); Ash v. Lake Oswego Sch. Dist. No. 7J, 766 F. Supp. 852, 864 (D. Or. 1991) ("Since this court has concluded that it was appropriate to place Christopher in a residential facility contrary to the IEP prepared by the [school district] in 1989, the court has the authority to order reimbursement to his parents who have incurred the costs."), aff'd, 980 F.2d 585 (9th Cir. 1992); J.S. v. Scarsdale Union Free Sch. Dist., 826 F. Supp. 2d 635, 656 (S.D.N.Y. 2011) (noting that where parties agreed that student required residential treatment for educational purposes, the "IEP, including a residential program, small class sizes, and therapy, was appropriate for [the student]"); cf. Bd. of Educ. of Montgomery Cty. v. Brett Y, 155 F.3d 557 (4th Cir. 1998) (Hamilton, J., dissenting) (stating that the "IEP's most serious flaw" in that case was that it "fail[ed] to require a residential placement so that [the student could] make educational progress").

Here, the ALJ rejected M.S.'s argument that the District's failure to discuss or consider a residential placement for educational reasons constituted a procedural violation of the IDEA and therefore denied M.S. a FAPE.  Specifically, the ALJ found that the District "had no obligation to offer the locked Vista residence as part of its FAPE offer to [M.S.], because [DCFS] had already placed [M.S.] there, in compliance with the

---

[1]  Pursuant to 34 C.F.R. § 300.104, "[w]hen a student requires a residential placement, the IDEA requires a [school] district to pay for reasonable, *non-medical* expenses associated with that placement." Ashland, 587 F.3d at 1184 (emphasis added) (citing 34 C.F.R. § 300.104) ("If placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

court order that it provide a residential placement to [M.S.], and further in compliance with its own legal obligation to provide a placement that was appropriate for [M.S.'s] mental health needs." AR 1754 (ALJ's Summary of Decision).

Because the Court here finds that the District had an independent obligation to "ensure that a continuum of alternative placements [was] available to meet [M.S.'s educational] needs," 34 C.F.R. § 300.115(a)—and to consider whether a residential placement was "considered necessary for educational purposes" and not merely "necessary quite apart from the learning process," Clovis, 903 F.2d at 643—the Court concludes that the ALJ erred and, as explained more fully *infra*, is appropriately reversed.

**b.     The District's Predetermination and Failure to Discuss M.S.'s Residential Placement**

In the Ninth Circuit, "[a] school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement." K.D. ex rel. C.L. v. Dep't of Educ., Hawaii, 665 F.3d 1110, 1123 (9th Cir. 2011). Again, in developing M.S.'s IEP, the District was obligated to "ensure that a continuum of alternative placements [was] available to meet [M.S.'s] needs," 34 C.F.R. § 300.115(a), and federal law further mandated that potential placement in a residential treatment center be a part of that continuum, 34 C.F.R. § 300.115 (a school district "must ensure that a continuum of alternative placements is available . . . [including] instruction in regular classes, special classes, special schools, home instruction, and instruction in hospitals and institutions").

Here, the District cannot reasonably deny that with respect to M.S.'s *educational* needs, it predetermined M.S.'s placement—or at least "steer[ed] the IEP to [DCFS's] predetermined [residential] placement"—in advance of the October 2014 IEP meeting. K.D. ex rel. C.L., 665 F.3d at 1123. Indeed, the District has consistently argued that it "had absolutely no obligation to provide a residential placement for M.S. under state law or federal law," D's Opening Br. at 13, and accordingly did not have to independently consider whether, under the IDEA, M.S. might be entitled to a residential placement to meet her educational needs. Thus, the development of M.S.'s October 2014 IEP—at least with respect to the question of whether residential placement was necessary for educational purposes—was effectively predetermined by the District based upon DCFS's decision regarding residential placement for mental health purposes. Such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

"[p]redetermination violates the IDEA because the Act requires that the placement *be based on the IEP, and not vice versa*." Id. (emphasis added); see also Doyle v. Arlington Cnty. Sch. Bd., 806 F. Supp. 1253, 1262 (E.D. Va. 1992) (noting that school officials must come to an IEP meeting with "an open mind," although they may have given thought to placement), aff'd 39 F.3d 1176 (4th Cir. 1994).

In resisting this conclusion, the District does not argue that it did in fact "come to the IEP table with an open mind." Doyle, 806 F. Supp. at 1262. Instead, the District essentially argues, on various grounds, that DCFS's first-in-time residential placement—made pursuant to a Juvenile Court order and in light of California law governing the provision of services for emotionally disturbed children and court wards—effectively relieved the District of its duty to maintain an "open mind" regarding a potential residential placement for educational purposes, as required by the IDEA. Ultimately, each of the District's arguments is unavailing.

First, the various California statutes to which the District cites do not relieve it of its duties under the IDEA. In particular, the District relies upon certain provisions of the California Education Code pertaining to Licensed Children's Institutions and Foster Family Homes. The subset of statutory provisions at issue here, California Education Code sections 56155, et seq., "appl[ies] to individuals with exceptional needs placed in a licensed children's institution [like the Vista Facility] or foster family home by [1] a court . . . or [2] public agency [like DCFS] *other than an educational agency* [like, for example, a local school district]." Cal. Educ. Code § 56155 (emphasis added).

In the District's view, section 56157 of the Education Code "specifically limits the types of placements the District needs to consider" where, as here, a child is placed in a licensed children's institution by a public agency like DCFS. D's Opening Br. at 22. Section 56157 reads as follows:

> (a) In providing appropriate programs to individuals with exceptional needs residing in licensed children's institutions or foster family homes, the local educational agency shall first consider services or programs operated by *public educational agencies*. If those programs are not appropriate, special education and related services shall be provided by contract with a *nonpublic nonsectarian school*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|------------------------|------|---------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

Cal. Educ. Code § 56157 (emphasis added). The District argues, and the ALJ concluded, that pursuant to section 56157, the District here was only required to decide whether M.S. should be provided services or programs operated by (1) a *public* educational agency or by (2) a *nonpublic* nonsectarian school. See id. In the District's view, "[t]hat's it; there is no requirement to consider a 'residential placement' because the child is already in a residential placement for other reasons." See Defendant's Responsive Brief ("D's Resp. Brief") at 10. In other words, because DCFS placed M.S. into the Vista Facility based on its assessment regarding her mental health needs, the District contends it was no longer obligated to consider whether M.S. might need a residential placement for educational reasons, or whether any such need should be memorialized in her IEP.

This argument fails, however, because the California Education Code merely "supplements" the IDEA—it does not supersede it or otherwise relieve entities within its purview of their obligations thereunder. I.R. ex rel. E.N. v. Los Angeles Unified Sch. Dist., 805 F.3d 1164, 1168 (9th Cir. 2015); see also J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 433 (9th Cir. 2010) ("Both state statutes and federal regulations supplement IDEA's procedural and substantive requirements."). Under the District's view of the law, a school district would actually be prohibited by section 56157 from considering placement in a residential treatment center for children placed by DCFS in "foster family homes," even if the student's IEP would otherwise call for a "residential treatment center" to meet the child's educational needs.[1] This cannot be the law.

Second, the District suggests that it would be "absurd" to obligate it "to consider a residential placement for educational reasons" for "every special education student placed by DCFS at [the Vista Facility]." D's Opening Br. at 21. In the District's view, residential placements for educational reasons "are a function of a student's *educational* needs *at the time of the IEP meeting*," and at the time of the IEP meetings at issue here, "M.S. was already in an appropriate residential placement for her severe mental health needs; therefore, she did not need another residential placement." D's Resp. Br. at 2-3 (emphasis in original). The ALJ adopted a similar view, finding that M.S. had "cited nothing in the IDEA or the Education Code that requires a school district to offer duplicative services in that situation, even if the service or placement that the non-

---

[1]   Notably, section 56157 expressly applies to children placed in "foster family homes," as well as those placed in "local children's institutions."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|----------------------|------|--------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

educational agency is providing may be necessary for the Student to receive a FAPE."
AR 1807 (ALJ Legal Conclusion No. 44). The ALJ cautioned, however, that "[t]he
situation would be different if [DCFS] were not fulfilling its obligations to provide [M.S.]
an appropriate placement." AR 1807 (ALJ Conclusion of Law 44, n.19).

> In that instance, if [M.S.] required a particular placement for
> educational purposes, and [DCFS] was not providing it, [the
> District] might be obligated to petition the Los Angeles
> Superior Court to modify the placement pursuant to Welfare
> and Institutions Code sections 362 or 388. Since [DCFS] has
> fulfilled its placement obligations thus far, the scenario
> contemplated by those code sections has not arisen.

Id.

As explained *supra*, this line of reasoning is flawed, as it assumes that the two
obligations at issue here—i.e., DCFS's obligation to provide necessary and appropriate
"permanent placement services" in light of M.S.'s mental health needs, and the District's
obligation to consider whether M.S. is entitled to a particular residential placement to
meet her educational needs—are duplicative. This, of course, is not the case, as DCFS
and the District employ distinct criteria in determining which particular residential
arrangement may be most appropriate for children within their purview. And while it is
true, as the District argues, that an IEP "is a snapshot, [and] not a retrospective," Adams
v. State of Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999) (citation omitted), an appropriate
"snapshot" must, at any given moment in time, sufficiently capture the child's
*educational* needs. To the extent a residential placement is necessary for *educational
reasons* in order to provide a FAPE "at the time the [IEPs] were drafted," see id.,
indicating as much in the IEP is not "absurd," as the District argues, see D's Opening Br.
at 21, but required.

Furthermore, the District's argument appears to ignore the IDEA's many
procedural safeguards, such as the "stay put provision," which provides that "during the
pendency of any proceedings" wherein the child is disputing an altered placement, "the
child shall remain in [his or her] then-current educational placement." See 20 U.S.C. §
1415(j). Thus, for example, if the District *had* indicated an educationally-based need for
a residential placement in M.S.'s IEP, M.S. could have filed a "stay put" motion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|------------------------|------|---------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

prevent or delay any change of residence to ensure that such a move was educationally appropriate and made with the least amount of disruption to her educational progress. The uniquely powerful nature of this procedural safeguard was recognized by the Ninth Circuit in <u>Joshua A. v. Rocklin Unified Sch. Dist.</u>, 559 F.3d 1036, 1040 (9th Cir. 2009). As the court explained, "the stay put provision requires no specific showing on the part of the moving party, and no balancing of equities by the court," which "evidences Congress's sense that there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting." <u>Id.</u> In light of this risk, "the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." <u>Id.</u> Here, the ALJ's ruling, if allowed to stand, would permit school districts to deprive students entitled to this crucial procedural protection simply because a non-educationally focused public agency like DCFS happened to place the student in a residential arrangement that seemed appropriate for non-educational reasons.

Third, the District argues that there was no predetermination regarding M.S.'s placement because the October 21, 2014 IEP was developed with "*substantial input* from the educational rights holder . . . and M.S.'s attorneys, Dean Conklin and Edith Madrid, which is documented in the IEP meeting transcript." D's Opening Br. at 18 (citing AR 1604-1688). At bottom, the District contends that it did not predetermine M.S.'s placement because it satisfied the requirement of meaningful parental involvement at the IEP meeting by allowing M.S.'s representatives to take part in a discussion of other educational placement options, not including a residential treatment center. <u>Id.</u> at 11. ("[T]here was a full discussion regarding  [M.S.'s] continued placement in the [nonpublic school] . . . or possibly public school placement . . . . All of these options were fully discussed by the IEP team, including . . . M.S.'s two attorneys . . . . and educational rights holder . . . ."). However, the District cannot defeat a finding of predetermination by simply allowing M.S.'s representatives to attend and speak at an IEP meeting. The IDEA "explicitly imagines that each child with special needs will receive an appropriate education through the collaborative process between the [District] and the parent(s)," and it "would run contrary to the spirit of the IDEA to conclude that the [District] is permitted to make some substantive choices about the child's educational needs unilaterally"—such as a determination regarding her need (or lack thereof) for an educationally-related residential placement—simply "because it has made some other threshold amount of conclusions in consultation with the parent(s)." <u>E.H. v. New York City Dep't of Educ.</u>, — F. Supp. 3d —, No. CV-15-3535, 2016 WL 631338, at *9 (S.D.N.Y. Feb. 16, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|---|---|---|---|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

Ultimately, "[t]he clear implication" of the District's central argument in this appeal is "that no matter how strong the evidence presented by [M.S.'s attorneys or caretakers], the [District] still would have refused to provide" for a residential placement based upon M.S.'s educational needs because, in the District's view, DCFS had effectively discharged it of the duty to do so.  Deal v. Hamilton Cty. Bd. of Educ., 392 F.3d 840, 858 (6th Cir. 2004).  "This is predetermination."  Id.

> **c.      Whether the District's Predetermination of M.S.'s Educational Placement Substantively Denied Her of a FAPE**

While "[h]armless procedural errors do not constitute a denial of FAPE," procedural inadequacies "that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of FAPE."  Doug C., 720 F.3d at 1043.  As the Ninth Circuit explained in Doug C.,

> an IEP team's failure to properly consider an alternative educational plan can result in a lost educational opportunity even if the student cannot definitively demonstrate that his placement would have been different but for the procedural error . . . A procedural error results in the denial of an educational opportunity where, absent the error, there is a "strong likelihood" that alternative educational possibilities for the student "would have been better considered."

Doug C., 720 F.3d at 1047 (citation omitted).

Here, as explained *supra*, LAUSD's predetermination regarding M.S.'s residential placement and failure to discuss the propriety of a residential placement for educational purposes constitutes a procedural error under the IDEA.  Absent this procedural error, there is undoubtedly "a 'strong likelihood' that alternative educational possibilities for [M.S.]"—including a residential placement for educational purposes—" 'would have been better considered,' " and, perhaps, would ultimately have been reflected in the IEP. Id.; see also M.L. v. Fed. Way Sch. Dist., 394 F.3d 634, 657 (9th Cir. 2005) (Gould, J. concurring in part and concurring in the judgment) (IEP procedural error cannot be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
|----------|------------------------|------|---------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

"harmless" where, absent such error, other educational placements would have likely been considered).

Dr. Mary Large, M.S.'s expert, testified at the OAH hearing that "[i]n her opinion, [M.S.] required the level 14 residential placement with the attached nonpublic school[] because she needed a high level of containment both residentially *and educationally*." AR 1785 (ALJ Finding of Fact No. 128) (emphasis added).

> In particular, [M.S.] required milieu therapy on a regular basis and trained staff to respond to a range of situations. [M.S.] received milieu therapy in the residence, and some milieu therapy was also available at the school. At the time of her assessment, Dr. Large believed that *[M.S.] could not have benefitted from her nonpublic school placement if she had not also had a residential placement. [M.S.] needed the residence placement to provide the behavioral support she needed.*

Id. (emphasis added).

The record also demonstrates that M.S.'s educational rights holder and attorneys have, at times, appeared to request an IEP reflecting a placement in a residential treatment center. For example, while M.S.'s educational rights holder signed the February 28, 2013 IEP, she disagreed that the IEP constituted a FAPE, commenting as follows: "I agree to implement [special day class] placement while [M.S.] is detained, but maintain[] that *she requires residential placement*." AR 730 (emphasis added). In June 2013, although DCFS had already placed M.S. at the Vista Facility, M.S.'s educational rights holder nonetheless requested in the IEP that there be an "*educationally related* mental health assessment for residential." AR 1763 (ALJ Finding of Fact No. 28) (quoting IEP consent page) (emphasis added).

Furthermore, the District received the report of Dr. Large in advance of the October 21, 2014 IEP meeting. "Regarding school placement," Dr. Large wrote in her report, "[M.S.] does not yet appear ready to move to a less restrictive *educational setting*." AR 986 (Report). However, the IEP team did not review Dr. Large's report at the meeting, and there was no evidence that the District reviewed it at any other time. AR 1810 (ALJ Conclusion of Law No. 52). Just as the District's failure to review Dr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | Date | September 12, 2016 |
| --- | --- | --- | --- |
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | |

Large's report "potentially deprived [M.S.] of an educational benefit," AR 1810 (ALJ Conclusion of Law No. 54), there is a "strong likelihood" that alternative educational possibilities for M.S. "would have been better considered" had the District not failed to discuss M.S.'s need for an educationally-related residential placement, Doug C., 720 F.3d at 1047 (citation omitted). See also AR 1791 (ALJ Conclusion of Fact No. 154) (noting Dr. Large "felt that it was important for the IEP team to include [M.S.'s] residential placement in her IEP because of its impact on the educational setting, and [M.S.] required interventions across settings to obtain a lower level of care.").

Accordingly, the Court finds that the District's predetermination of M.S.'s educational placement, and the District's failure to discuss the potential necessity of including a residential treatment center as part of her IEP, was not harmless and indeed denied M.S. of a FAPE.

**B.      Whether the District Denied M.S. a FAPE by Failing to Offer Placement at a Residential Treatment Facility in the February 26, 2014 and October 21, 2014 IEP meetings**

Because the Court has concluded that the District's procedural violation resulted in the loss of an educational opportunity and thus the denial of a FAPE, the court need not also address whether M.S.'s February and October 2014 IEPs were "reasonably calculated to enable [M.S.] to receive educational benefits." Doug C., 720 F.3d at 1043 (citation omitted); see also Deal, 392 F. 3d at 862 (noting placement must provide student with a "meaningful" educational benefit). Of course, M.S. contends that the District's failure to offer a residential placement at the February 26, 2014 IEP and October 21, 2014 IEP meetings denied her of a FAPE. The ALJ found otherwise, concluding, in accordance with its reasoning on the predetermination issue, that because of M.S.'s "dependency status, and an order by the juvenile court regarding [her] residential placement for non-educational reasons, [the District] was not required to make a residential placement offer." AR 1815 (ALJ Conclusion of Law No. 68).

In light of the Court's conclusions regarding the District's obligations under the IDEA, as discussed *supra*, the Court concludes that both the February and October 2014 IEPs denied M.S. a FAPE, as both IEPs only reflect placement in a non-public school, without any residential component. As M.S. notes, and the District concedes, an IEP must be "reasonably calculated to enable [a student] to receive educational benefits." D's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-05819-CAS-MRW | | Date | September 12, 2016 |
|----------|-----------------------|---|------|---------------------|
| Title | M. S. v. LOS ANGELES UNIFIED SCHOOL DISTRICT | | | |

Opening Br. at 10.  The District cannot establish that M.S.'s IEPs met this standard, as both February 26, 2014 and October 21, 2014 IEPs only reflect that M.S. was to be placed in a nonpublic school and failed even to consider whether a residential placement for educational purposes might be appropriate or required.

## VII.  CONCLUSION

For the foregoing reasons, the ALJ's judgment as to Student Issues 1(A)(5), 1(A)(7), and 1(A)(11) is **REVERSED**.[1]  The District deprived M.S. of a FAPE by (1) failing to discuss placement at a residential treatment facility at the October 21, 2014 IEP meeting; (2) predetermining the question of placement at a residential treatment facility at the October 21, 2014 IEP meeting; and (3) failing to offer placement at a residential treatment facility in the February 26, 2014 IEP and October 21, 2014 IEP meetings.  M.S. is the prevailing party on all issues in this appeal.

The Court **REMANDS** to the ALJ for a determination regarding the appropriate relief in light of the Court's ruling here and the evidence in the record.

Counsel for plaintiff is directed to file in this Court a noticed-motion for an award of attorneys' fees no later than **Monday, October 10, 2016**.

IT IS SO ORDERED.

| | : | 00 |
|---|---|---|
| Initials of Preparer | IV | |

---

[1]  In reaching its conclusion here, the Court notes that it takes no position regarding which public entity may ultimately be responsible for payment of residential treatment services in the event that multiples entities, like DCFS and a local school district, independently decide a particular residential placement is appropriate for a given child under the agencies' respective statutory frameworks and obligations.